**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, *ex rel.*<br>KATHLEEN JENNINGS,<br>Attorney General of the State of Delaware,<br><br>Plaintiff,<br><br>v.<br><br>BP AMERICA INC., BP P.L.C., CHEVRON<br>CORPORATION, CHEVRON U.S.A. INC.,<br>CONOCOPHILLIPS, CONOCOPHILLIPS<br>COMPANY, PHILLIPS 66, PHILLIPS 66<br>COMPANY, EXXON MOBIL<br>CORPORATION, EXXONMOBIL OIL<br>CORPORATION, XTO ENERGY INC., HESS<br>CORPORATION, MARATHON OIL<br>CORPORATION, MARATHON OIL<br>COMPANY, MARATHON PETROLEUM<br>CORPORATION, MARATHON PETROLEUM<br>COMPANY LP, SPEEDWAY LLC, MURPHY<br>OIL CORPORATION, MURPHY USA INC.,<br>ROYAL DUTCH SHELL PLC, SHELL OIL<br>COMPANY, CITGO PETROLEUM<br>CORPORATION, TOTAL S.A.,<br>TOTALENERGIES MARKETING USA, INC.,<br>OCCIDENTAL PETROLEUM CORPORATION,<br>DEVON ENERGY CORPORATION, APACHE<br>CORPORATION, CNX RESOURCES<br>CORPORATION, CONSOL ENERGY INC.,<br>OVINTIV, INC., and<br>AMERICAN PETROLEUM INSTITUTE,<br><br>Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | C.A. No. 20-1429-LPS |

Christian Douglas Wright, Jameson A.L. Tweedie, and Ralph K. Durstein III, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE

Victor M. Sher and Matthew K. Edling, SHER EDLING LLP, San Francisco, CA

>   Attorneys for Plaintiff

David E. Wilks and R. Stokes Nolte, WILKS LAW, LLC, Wilmington, DE

Theodore J. Boutrous, Jr. and William E. Thomson, GIBSON, DUNN & CRUTCHER LLP, Los Angeles, CA

Andrea E. Neuman, GIBSON, DUNN & CRUTCHER LLP, New York, NY

Thomas G. Hungar, GIBSON, DUNN & CRUTCHER LLP, Washington, DC

Joshua D. Dick, GIBSON, DUNN & CRUTCHER LLP, San Francisco, CA

>   Attorneys for Defendants Chevron Corporation and Chevron U.S.A. Inc.

Steven L. Caponi and Matthew B. Goeller, K&L GATES LLP, Wilmington, DE

David C. Frederick, Grace W. Knofczynski, and Daniel S. Severson, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, DC

>   Attorneys for Defendants Royal Dutch Shell plc and Shell Oil Company

Catherine A. Gaul, ASHBY & GEDDES, Wilmington, DE

Nancy G. Milburn and Diana E. Reiter, ARNOLD & PORTER KAYE SCHOLER LLP, New York, NY

Jonathan W. Hughes, ARNOLD & PORTER KAYE SCHOLER LLP, San Francisco, CA

Matthew T. Heartney and John D. Lombardo, ARNOLD & PORTER KAYE SCHOLER LLP, Los Angeles, CA

>   Attorneys for Defendants BP America Inc. and BP p.l.c.

Kenneth J. Nachbar and Alexandra M. Cumings, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE

Nathan P. Eimer, Pamela R. Hanebutt, and Lisa S. Meyer, EIMER STAHL LLP, Chicago, IL

Robert E. Dunn, EIMER STAHL LLP, San Jose, CA

     Attorneys for Defendant CITGO Petroleum Corporation


Jeffrey L. Moyer and Christine D. Haynes, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

Kevin Orsini and Vanessa A. Lavely, CRAVATH, SWAINE & MOORE LLP, New York, NY

     Attorneys for Defendant Occidental Petroleum Corporation


Colleen D. Shields and Patrick M. Brannigan, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE

Tristan L. Duncan, Daniel B. Rogers, and William F. Northrip, SHOOK, HARDY & BACON L.L.P.

     Attorneys for Defendant Murphy USA Inc.


Antoinette D. Hubbard and Stephanie A. Fox, MARON MARVEL BRADLEY ANDERSON & TARDY LLC, Wilmington, DE

Shannon S. Broome and Ann Marie Mortimer, HUNTON ANDREWS KURTH LLP, San Francisco, CA

Shawn Patrick Regan, HUNTON ANDREWS KURTH LLP, New York, NY

     Attorneys for Defendants Marathon Petroleum Corporation, Marathon Petroleum Company LP, and Speedway LLC


Kevin J. Mangan, Kristen H. Cramer, and Nicholas T. Verna, WOMBLE BOND DICKINSON (US) LLP, Wilmington, DE

Andrew G. McBride, MCGUIREWOODS LLP, Washington, DC

     Attorneys for Defendant American Petroleum Institute

Christian J. Singewald, WHITE AND WILLIAMS LLP, Wilmington, DE

Joy C. Fuhr, Brian D. Schmalzbach, and W. Cole Geddy, MCGUIREWOODS LLP, Richmond, VA

     Attorneys for Defendant Devon Energy Corporation


Mackenzie M. Wrobel, DUANE MORRIS LLP, Wilmington, DE

Michael F. Healy, SHOOK HARDY & BACON LLP, San Francisco, CA

Michael L. Fox, DUANE MORRIS LLP, San Francisco, CA

     Attorneys for Defendant Ovintiv Inc.


Paul D. Brown, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, DE

Kathleen Taylor Sooy and Tracy A. Roman, CROWELL & MORING LLP, Washington, DC

Honor R. Costello, CROWELL & MORING LLP, New York, NY

     Attorneys for Defendants CNX Resources Corp. and CONSOL Energy Inc.


Michael P. Kelly, Daniel J. Brown, and Alexandra M. Joyce, MCCARTER & ENGLISH LLP, Wilmington, DE

Steven M. Bauer and Margaret A. Tough, LATHAM & WATKINS LLP, San Francisco, CA

Jameson R. Jones, and Daniel R. Brody, BARTLIT BECK LLP, Denver, CO

     Attorneys for Defendants ConocoPhillips and ConocoPhillips Company


Daniel A. Mason and Matthew D. Stachel, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, DE

Yahonnes Cleary and Caitlin E. Grusauskas, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, NY

     Attorneys for Defendants Exxon Mobil Corporation, ExxonMobil Oil Corporation, and XTO Energy Inc.

Michael P. Kelly, Daniel J. Brown, and Alexandra M. Joyce, MCCARTER & ENGLISH LLP, Wilmington, DE

Steven M. Bauer and Margaret A. Tough, LATHAM & WATKINS LLP, San Francisco, CA

> Attorneys for Defendants Phillips 66 and Phillips 66 Company

Robert W. Whetzel, RICHARDS LAYTON & FINGER, P.A., Wilmington, DE

Patrick W. Mizell, Matthew R. Stamme, Stephanie L. Noble, and Brooke A. Noble, VINSON & ELKINS L.L.P., Houston, TX

Mortimer H. Hartwell, VINSON & ELKINS L.L.P., San Francisco, CA

> Attorneys for Defendant Apache Corporation

Michael A. Barlow, ABRAMS & BAYLISS LLP, Wilmington, DE

Robert P. Reznick, ORRICK, HERRINGTON & SUTCLIFFE LLP, Washington, DC

James Stengel and Marc R. Shapiro, ORRICK, HERRINGTON & SUTCLIFFE LLP, New York, NY

Catherine Y. Lui, ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, CA

> Attorneys for Defendant Marathon Oil Corporation

Joseph J. Bellew, WHITE AND WILLIAMS LLP, Wilmington, DE

J. Scott Janoe, BAKER BOTTS L.L.P., Houston, TX

Megan Berge, BAKER BOTTS L.L.P., Washington, DC

> Attorneys for Defendant Hess Corporation

Joseph J. Bellew, WHITE AND WILLIAMS LLP, Wilmington, DE

J. Scott Janoe, BAKER BOTTS L.L.P., Houston, TX

Megan Berge, BAKER BOTTS L.L.P., Washington, DC

> Attorneys for Defendant Murphy Oil Corporation

Robert W. Whetzel and Blake Rohrbacher, RICHARDS LAYTON & FINGER, P.A.,
Wilmington, DE

Anna Rotman, KIRKLAND & ELLIS LLP, Houston, TX

    Attorneys for Defendants Total S.A. and TotalEnergies Marketing USA, Inc.


## **MEMORANDUM OPINION**


January 5, 2022
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is the State of Delaware's ("Delaware" or "Plaintiff") motion to remand, filed pursuant to 28 U.S.C. § 1447(c). (D.I. 86) The Court has reviewed the complaint (D.I. 1-1), the notice of removal (D.I. 1), and the parties' briefs, exhibits, declarations, and notices of supplemental authority (*see, e.g.*, D.I. 89, 96-99, 101, 104, 107, 108, 113, 119). The Court also heard argument via teleconference on May 19, 2021. (D.I. 111) ("Tr.") For the reasons set forth below, the Court will grant Plaintiff's motion.[1]

## I.    BACKGROUND

On September 10, 2020, Plaintiff filed suit in the Delaware Superior Court against numerous major corporations having operations in the fossil fuel industry (collectively, "Defendants"). Plaintiff's complaint asserts solely state-law claims, specifically for: (1) negligent failure to warn, (2) trespass, (3) nuisance, and (4) violations of the Delaware Consumer Fraud Act.[2] (D.I. 1-1 ¶¶ 234-80) Plaintiff's claims are based on an alleged

---

[1] In their initial briefing, Defendants suggested that cases then pending before the U.S. Supreme Court might address issues relating to federal jurisdiction and the same type of claims asserted here. (*See* D.I. 96 at 6-7) Defendants did not formally request a stay, although they observed that "awaiting guidance from the Supreme Court on the issues raised in Plaintiff's Motion may further the interests of judicial economy and efficiency." (D.I. 96 at 7) Thereafter, on May 17, 2021, the Supreme Court issued its ruling in *BP P.L.C. v. Mayor of Baltimore*, 141 S. Ct. 1532 (2021) ("*Baltimore III*"). The *Baltimore III* decision, however, only addresses the scope of appellate review and does not reach the merits of any dispute over federal jurisdiction. During oral argument in the instant case, Defendants suggested that the Court delay its decision until after the Supreme Court rendered its ruling on the petition for a writ of certiorari in the appeal from the Ninth Circuit's decision in *City of Oakland v. BP P.L.C.*, 960 F.3d 570 (9th Cir. 2020), *modified by* 969 F.3d 895. (*See* Tr. at 88-89) The Supreme Court subsequently denied that petition on June 14, 2021. *See Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (2021). No party has suggested there is any reason for further delay in resolving Plaintiff's motion.

[2] The negligent failure to warn, trespass, and nuisance claims are brought against the "Fossil Fuel Defendants," which includes the BP entities (BP P.L.C. and BP America Inc.), the Chevron entities (Chevron Corporation and Chevron USA, Inc.), the ConocoPhillips entities (ConocoPhillips, ConocoPhillips Company, Phillips 66, and Phillips 66 Company), the Exxon

disinformation campaign undertaken by Defendants, purportedly to mislead the public and consumers by misrepresenting the devastating impacts of climate change and its link to fossil fuels – ultimately leading to disastrous climate impacts on the State of Delaware, as the result of increased extraction, production, and consumption of fossil fuels. (*See id.* ¶¶ 1-12)[3]

According to Plaintiff, Defendants have known for more than 50 years that their fossil fuel products create greenhouse gas pollution having significant adverse impacts on the climate and sea levels. (*See id.* ¶¶ 1, 7, 62-103)  Instead of disclosing the known harms associated with their products, Defendants embarked on a campaign of denial and disinformation about the existence, cause, and adverse effects of global warming, which was designed to protect and expand the consumption of their fossil fuel products. (*See id.* ¶¶ 104-60)  As the scientific consensus about the causes and consequences of climate change has strengthened, Defendants continued to mislead the public by advertising that certain fossil fuel products are "green" or

---

entities (Exxon Mobil Corporation, ExxonMobil Oil Corporation, XTO Energy Inc.), Hess Corporation, the Marathon entities (Marathon Oil Corporation, Marathon Oil Company, Marathon Petroleum Corporation, Marathon Petroleum Company LP, and Speedway LLC), the Murphy Oil entities (Murphy Oil Corporation and Murphy USA, Inc.), the Shell entities (Royal Dutch Shell PLC and Shell Oil Company), Citgo Petroleum Corporation, the Total entities (Total S.A. and TotalEnergies Marketing USA, Inc.), Occidental Petroleum Corporation, Devon Energy Corporation, Apache Corporation, the CONSOL entities (CNX Resources Corporation and CONSOL Energy Inc.), and Ovintiv, Inc. (*See* D.I. 1-1 ¶ 36)  The claim for violation of the Delaware Consumer Fraud Act ("CFA") is brought against Defendant American Petroleum Institute and some, but not all, of the Fossil Fuel Defendants (including the BP entities, the Chevron entities, the Exxon entities, Hess Corporation, the Shell entities, Citgo Petroleum Corporation, CNX Resources Corporation, and the Marathon entities) (this subgroup of Defendants hereinafter referred to as the "CFA Defendants"). (*See id.* ¶ 265)

[3] The Court understands Plaintiff's theory to be, in part, that Defendants' misrepresentations and deception caused increased consumption of fossil fuels all around the world, leading to injurious environmental impacts in Delaware, impacts for which Plaintiff seeks to recover damages (among other potential relief). (*See* D.I. 1-1 ¶¶ 7-11; *see also* Tr. at 93 ("[T]he only source of liability is the misrepresentation . . . and the damages are restricted to the impact in Delaware."))

"clean," and falsely portraying themselves as environmentally conscious companies that invest heavily in renewable energy sources. *(See id.* ¶¶ 161-210)

Plaintiff alleges it has suffered, and will foreseeably continue to suffer, damages from the climate impacts purportedly caused by Defendants' disinformation campaign, including accelerating sea level rise, increased extreme weather events, ocean acidification, and elevated average air temperature. *(See id.* ¶¶ 226-30) Plaintiff further contends it has incurred, and will continue to incur, expenses to preemptively mitigate the injuries caused by Defendants' misconduct. *(See id.* ¶ 231) Plaintiff seeks compensatory damages, penalties under the Delaware Consumer Fraud Act, punitive damages, and attorneys' fees and costs.[4] *(See id.* at 217) (Prayer for Relief)

On October 23, 2020, Defendants removed this action from the Delaware Superior Court to this Court, citing seven grounds for federal jurisdiction: (1) federal common law, (2) *Grable* jurisdiction, (3) complete preemption by the Clean Air Act ("CAA"), (4) federal enclave jurisdiction, (5) the federal officer removal statute, 28 U.S.C. § 1442, (6) jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, and (7) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453. *(See* D.I. 1)

---

[4] The Prayer for Relief in Plaintiff's complaint does not seek an injunction against Defendants' oil production, marketing, and sales activities. However, in stating the common-law nuisance claim, the complaint does indicate that Plaintiff "seeks an order that . . . enjoins Fossil Fuel Defendants from creating future common-law nuisance." (D.I. 1-1 ¶ 263) During oral argument, Plaintiff insisted it is "in no way directly asking a court to limit, modify, alter, cease, [or] in any way hinder the actual exploration, production, sale, [and] consumption of fossil fuels," adding that "any injunctive relief" would instead "focus on the veracity of marketing and other public communications." (Tr. at 27-29) Plaintiff then further clarified it would not "be looking for prospective injunctive relief against speech of any kind," adding that Defendants "can continue to market, but they may be subject to liability in Delaware for continued false and deceptive conduct." *(Id.* at 93-94, 103) The Court, thus, understands that Plaintiff seeks no injunctive relief "directed at [D]efendants' forward-looking activities in any way." *(Id.* at 29)

Plaintiff filed the pending motion on November 20, 2020, seeking remand of the instant action back to the Delaware Superior Court.  (D.I. 86)

## II.   LEGAL STANDARDS

Federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  A defendant may remove a civil action from a state court to a federal district court if the federal district court would have original jurisdiction of the action.  *See* 28 U.S.C. § 1441(a).  However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

"The removing party carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court.  Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand."[5]  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (internal citation omitted).

## III.   DISCUSSION

In the notice of removal, Defendants asserted seven grounds for removal.  (D.I. 1)  After Plaintiff challenged each of these grounds (*see generally* D.I. 89), Defendants effectively abandoned their contentions with respect to complete preemption by the CAA, federal enclave jurisdiction, and CAFA.[6]  Hence, the Court needs to address only the four remaining grounds:

---

[5] Defendants assert that the principle of "all doubts to be resolved in favor of remand" is no longer viable after the Supreme Court's *Baltimore III* ruling.  (Tr. at 71-72)  The Court disagrees. *Baltimore III* neither expressly addresses nor implicitly undermines this principle.

[6] In their briefing, Defendants only mention CAFA once in passing, and address complete preemption and federal enclave jurisdiction only in one footnote each.  (*See* D.I. 96 at 6, 19 n.7, 51 n.12)  These grounds for removal are, as a result, waived.  *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Peters v. Ryan*, 2017

4

(1) federal common law, (2) *Grable* jurisdiction, (3) the federal officer removal statute, and (4) jurisdiction under the OCSLA.  Defendants have failed to meet their burden to show that this Court may exercise jurisdiction over this case on any of these four grounds.  Thus, the Court will grant Plaintiff's motion and remand this case to the Delaware Superior Court.

A.     **Federal Common Law**

Defendants contend that Plaintiff's state-law claims "necessarily arise under federal common law" because the issues presented in these claims "are exclusively federal in nature." (D.I. 1 at 23; D.I. 96 at 16)  According to Defendants, since Plaintiff's claims "seek to regulate transboundary and international emissions and pollution," they fall under one of the specialized areas of overriding federal interest.  (D.I. 96 at 16)  Additionally, since Plaintiff's claims "seek to regulate the production and sale of oil and gas abroad," they implicate the "federal government's foreign affairs power."  (*Id.* at 18)

Plaintiff counters that federal common law cannot provide an independent basis for removal because Plaintiff's complaint asserts exclusively state-law claims; any exceptions to the well-pleaded complaint rule are not satisfied in this case.  (D.I. 89 at 8; D.I. 101 at 3)  Plaintiff also insists that its claims do not implicate federal common law, as they seek neither to address cross-border pollution nor to regulate international fossil fuel production and sales.  (D.I. 89 at 10; D.I. 101 at 7)

---

WL 1393692, at *2 (D. Del. Apr. 13, 2017) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned by the non-movant.").  During oral argument, Defendants confirmed that they have "narrowed things down" to the four grounds that the Court addresses, adding that federal enclave jurisdiction is "subsumed within" other bases for removal.  (*See* Tr. at 65)

The Court agrees with Plaintiff that federal common law cannot create federal jurisdiction to support removal here, irrespective of whether Plaintiff's claims are "federal in nature."[7]

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal citation omitted). "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, . . . even if the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983). Hence, a plaintiff may "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Nevertheless, a court may uphold removal "where federal law ***completely*** preempts an asserted state-law claim." *Rivet*, 522 U.S. at 471 (emphasis added). Federal law completely preempts state law "[o]nly if Congress intended [for the federal law] to provide the exclusive cause of action" asserted in the claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003).

Plaintiff's claims are not completely preempted by federal common law. Defendants do not dispute, nor can they, that Plaintiff's complaint, on its face, only asserts state-law causes of action. The complaint makes no attempt to state any claims arising under federal common law.

---

[7] Having found that federal common law cannot create a basis for removal, the Court need not reach the question of whether federal common law has been displaced by the Clean Air Act, as Plaintiff contends. (*See* D.I. 89 at 11; D.I. 96 at 21-22) If Plaintiff is correct, this would provide yet another basis to reject Defendants' assertion of federal common law as a ground to deny remand.

Nor is there any indication that Congress has intended for federal common law to provide the exclusive cause of action for the claims asserted in the complaint. *See Beneficial Nat'l Bank*, 539 U.S. at 9. In apparent recognition of the futility of this theory, Defendants have expressly abandoned the preemption ground, noting that their federal common law analysis "does not implicate preemption principles or standards." (D.I. 1 ¶ 14)

Unable to establish complete preemption, Defendants turn to argue that Plaintiff's claims have an "inherently federal nature." (D.I. 96 at 18) This contention, too, is unpersuasive. In the Court's view, Defendants' repeated refrains that federal common law "governs" or "exclusively governs" the issues underlying Plaintiff's state-law claims are simply veiled – and non-meritorious, for purposes of removal – preemption arguments. (*See, e.g., id.* at 16) (referring to "specialized areas 'where there is an overriding federal interest in the need for a uniform rule of decision'") (quoting *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6 (1972) ("*Milwaukee I*")) Ordinary preemption, however, does not provide a basis for establishing federal jurisdiction. *See Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 362 (3d Cir. 2014) (finding that "preemption arguments, other than complete preemption, relate to the merits of the case" and "do not ordinarily raise issues of subject matter jurisdiction").

Neither the Supreme Court nor the Third Circuit has held that a complaint expressly asserting state-law claims that happen to implicate federal common law can create an additional exception to the well-pleaded complaint rule and confer removal jurisdiction on federal courts. *See Oakland*, 969 F.3d at 908 (reversing district court's finding that plaintiff's nuisance claims are removable on ground that such claims are governed by federal common law). The cases cited by Defendants for this supposed proposition are inapposite, as they either involve plaintiffs expressly pleading federal common law causes of action, *see Am. Elec. Power Co. v.*

7

*Connecticut*, 564 U.S. 410, 418, 421 (2011); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 848-50 (1985); *City of Milwaukee v. Illinois* ("*Milwaukee II*"), 451 U.S. 304, 310 (1981); *Treiber & Straub, Inc. v. United Parcel Serv., Inc.*, 474 F.3d 379, 383 (7th Cir. 2007), or involve federal courts exercising subject matter jurisdiction on grounds independent of federal questions, *see Milwaukee I*, 406 U.S. at 93 (proceeding by state plaintiff under Supreme Court's original jurisdiction pursuant to U.S. Const. art. III, § 2, cl. 2); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 406 (1964) (common law conversion claim brought by foreign government in federal district court); *United States v. Standard Oil Co.*, 332 U.S. 301, 302 (1947) (claims brought by United States in federal district court).[8] None of these cases supports the proposition that, in the context of removal, purportedly controlling federal common law issues – that are *not* pleaded on the face of a complaint – create the grounds for federal

---

[8] This category of cases also includes the New York case cited by Defendants as supplemental authority (D.I. 104), as that case was filed in federal district court in the first instance based on diversity jurisdiction. *See City of New York v. BP PLC*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), *aff'd*, 993 F.3d 81, 94 (2d Cir. 2021) ("Here, the City filed suit in federal court in the first instance. We are thus free to consider the Producers' preemption defense on its own terms, not under the heightened standard unique to the removability inquiry.").

Defendants also cite *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 45 (1st Cir. 1999), for the proposition that a case is one "arising under" federal law "[a]s long as the source of the rule to be applied is federal." (*See* D.I. 96 at 21-22) *Swiss Am. Bank*, however, concerns a "claim that arises under federal law" for purposes of establishing personal jurisdiction over a foreign defendant under Federal Rule of Civil Procedure 4(k)(2), and does not hold that a claim to which federal law applies as the source of the rule also confers original subject matter jurisdiction under 28 U.S.C. § 1331.

jurisdiction.[9]  Hence, existing law governing federal question jurisdiction does not support

Defendants' reliance on federal common law to establish removal jurisdiction in this case.[10]

Defendants' reliance on the "artful pleading" doctrine fares no better.  The Court rejects

Defendants' contention that this doctrine "is not necessarily linked to [the] complete preemption

doctrine."  (Tr. at 75; *see also* D.I. 96 at 20)  Under Third Circuit law, the "artful pleading"

doctrine is synonymous with the "complete preemption" doctrine for purposes of establishing

federal jurisdiction, supporting removal only where there is "a clear indication of a

Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."

*Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 n.5, 311 (3d Cir. 1994) (holding

that "complete preemption" doctrine "has been referred to elsewhere as the 'artful pleading'

doctrine"); *see also Inselberg v. New York Football Giants, Inc.*, 661 F. App'x 776, 779 (3d Cir.

2016) (same).  Thus, absent a finding of complete preemption of Plaintiff's state-law claims –

and Defendants disclaim any intent to show such complete preemption (*see* D.I. 1 ¶ 14) – the

---

[9] In their notice of removal (although not in their briefs), Defendants cite a single case in which federal common law was relied on as an independent basis for conferring federal jurisdiction: *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928-29 (5th Cir. 1997).  In *Sam L. Majors*, the Fifth Circuit held that a state-law negligence claim arose under federal common law and, thus, gave rise to federal jurisdiction.  In reaching that conclusion, the Fifth Circuit relied primarily on *Milwaukee I* and *Nat'l Farmers Union*.  Neither of these two cases, however, involved removal on the basis of federal common law.  Further, the reasoning of *Sam L. Majors* on this issue has been criticized by a number of courts.  *See, e.g.*, *Connecticut v. Exxon Mobil Corp.*, 2021 WL 2389739, at *4 (D. Conn. June 2, 2021); *Sekata v. FedEx*, 2020 WL 6546211, at *4-5 (N.D. Ohio Nov. 6, 2020); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.* ("*Boulder I*"), 405 F. Supp. 3d 947, 963 (D. Colo. 2019); *Signer v. DHL Worldwide Exp., Inc.*, 2007 WL 1521497, at *5-6 (S.D. Fla. May 22, 2007).  This Court, too, finds the reasoning of *Sam L. Majors* unpersuasive.

[10] Defendants' argument that "Section 1331's 'grant of jurisdiction will support claims founded upon federal common law as well as those of a statutory origin,'" while correct, is not dispositive, because Plaintiff has not asserted on the face of its complaint any "claims founded upon federal common law."  (D.I. 96 at 19) (quoting *Nat'l Farmers Union*, 471 U.S. at 850)

"artful pleading" doctrine does not provide an independent basis for removal, regardless of whether federal common law provides the rule of decision on the merits of Plaintiff's state-law claims. None of Defendants' cited cases holds otherwise.[11]

In sum, Plaintiff only asserts state-law claims in its complaint, and Defendants fail to show complete preemption. Therefore, Plaintiff's claims do not arise under federal law for jurisdiction purposes. Federal common law, even if (as Defendants insist) implicated in Plaintiff's state-law claims, does not provide a proper basis for removing this case. *See Oakland*, 969 F.3d at 908; *City of Hoboken v. Exxon Mobil Corp.*, 2021 WL 4077541, at *5-6 (D.N.J. Sept. 8, 2021); *Connecticut*, 2021 WL 2389739, at *7; *Minnesota v. Am. Petroleum Inst.*, 2021 WL 1215656, at *6 (D. Minn. Mar. 31, 2021); *Boulder I*, 405 F. Supp. 3d at 964; *Rhode Island v. Chevron Corp.* ("*Rhode Island I*"), 393 F. Supp. 3d 142, 150 (D.R.I. 2019); *Mayor of Baltimore v. BP P.L.C.* ("*Baltimore I*"), 388 F. Supp. 3d 538, 558 (D. Md. 2019); *Cty. of San Mateo v. Chevron Corp.* ("*San Mateo I*"), 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018). Therefore, the Court will turn to consideration of the other grounds asserted by Defendants as the basis for federal removal jurisdiction.

---

[11] *Jarbough v. Att'y Gen. of the United States*, 483 F.3d 184 (3d Cir. 2007), *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694 (3d Cir. 2005), and *First Pa. Bank, N.A. v. E. Airlines, Inc.*, 731 F.2d 1113 (3d Cir. 1984), are all inapposite, as they were filed and adjudicated in federal court and say nothing about the removability of state-law claims or subject matter jurisdiction. In *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981), the Supreme Court stated in a footnote: "[t]he Court of Appeals also affirmed the District Court's conclusion that *Brown II* was properly removed to federal court, reasoning that the claims presented were 'federal in nature.' We agree that at least some of the claims had a sufficient federal character to support removal." In a subsequent case, the Supreme Court clarified that *Moitie*'s "enigmatic footnote" does not create removal jurisdiction on the basis of a federal defense. *Rivet*, 522 U.S. at 477-78 ("We therefore clarify today that *Moitie* did not create a preclusion exception to the rule, fundamental under currently governing legislation, that a defendant cannot remove on the basis of a federal defense.").

### B.    *Grable* Jurisdiction

Federal jurisdiction exists in a "special and small category" of cases even when a party's claim "finds its origins in state rather than federal law." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Pursuant to what is commonly referred to as "*Grable* jurisdiction," "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258; *see also Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005). Defendants proffer numerous theories for why removal is proper here on the basis of *Grable* jurisdiction, all of which rely on Defendants' contention that Plaintiff's claims "necessarily involve inherently federal issues." (D.I. 96 at 22) In the Court's view, however, no federal issue is "necessarily raised" by this litigation. Accordingly, each of Defendants' efforts to invoke *Grable* jurisdiction fails.

Most broadly, Defendants contend that Plaintiff's claims attempt to "supplant federal energy policy, exercise the federal foreign affairs power, and regulate Defendants' speech over matters of public concern." (*Id.*) The Court disagrees with Defendants' characterization of Plaintiff's claims. Instead, Plaintiff's claims do not "necessarily raise" any question of federal law. (*See* D.I. 89 at 13; D.I. 101 at 14) The federal interest issues cited by Defendants do not provide "an essential element" for any of Plaintiff's claims; nor does the vindication of rights asserted in Plaintiff's claims "'necessarily turn[] on some construction of federal law.'" *Manning*, 772 F.3d at 163 (quoting *Franchise Tax Bd.*, 463 U.S. at 9).

More specifically, Defendants first argue that *Grable* jurisdiction exists because Plaintiff's claims seek to "strike a new regulatory balance that would supplant decades of national energy, economic, and environmental policies on these issues," and, thus, "cannot be

reconciled with the decision-making scheme Congress enacted." (D.I. 96 at 23) These statements are not consistent with a fair reading of Plaintiff's claims. Instead, the claims asserted by Plaintiff are based on Defendants' alleged disinformation campaign – which purportedly led to increased extraction, production, and consumption of petroleum products, without warning to consumers and the public of the risks known to Defendants (*see* D.I. 1-1 ¶¶ 1-12) – and Plaintiff's claims seek only relief directed at recovering damages resulting from that alleged disinformation campaign.[12] In other words, rather than (as Defendants, incorrectly, contend) "inviting a Delaware state court to assert control over an entire industry and its interstate (indeed, international) commercial activities" (D.I. 96 at 23), Plaintiff's claims in reality "do[] not challenge or seek to overturn any federal law, rule, or program," "do[] not claim that Defendants are liable for violating any federal law," and "neither directly nor indirectly seek[] any relief from any federal agency." (D.I. 89 at 15) Whether the indirect, non-judicially-imposed consequences of remediating the disinformation campaign (if, and only if, proven) would lead to changes in "energy, economic, and environmental policies" is not a matter with which the Court can be concerned. *See generally Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) (holding that federal courts have authority to answer questions "only if necessary to do so in the course of deciding an actual 'case' or 'controversy'"). Federal jurisdiction is not created by predictions about extra-judicial realities that may (or may not) result from a state court resolving a claim that raises solely matters of state law.

---

[12] Plaintiff clarified during oral argument that the injuries alleged in the complaint are limited to the "incremental impact" resulting from Defendants' "wrongful and tortious promotion and marketing." (Tr. at 24-26)

Defendants' next effort to invoke *Grable* jurisdiction rests on the theory that Plaintiff's

claims seek to "regulate global climate change, which is an inherently federal matter that is the

subject of major international treaties." (D.I. 96 at 24)  Contrary to Defendants' assertion,

however, nothing in Plaintiff's complaint shows that Plaintiff "seeks to replace these

international negotiations and decisions from the representative branches of government with a

state-law solution." (*Id.* at 25)  Defendants cite generally to international agreements on climate

change, including the Kyoto Protocol of 1997 and the Paris Agreement of 2015, but fail to

identify any "essential element" in Plaintiff's claims that would require a court to affirmatively

answer any foreign affairs question. *See Manning*, 772 F.3d at 163.  Hence, no federal question

concerning foreign affairs is "necessarily raised."[13]

Nor does Defendants' assertion that they may be subject to both state and federal

regulatory and enforcement regimes (*see* D.I. 96 at 23-24) bring this case within the "slim

category" of *Grable* jurisdiction.  As the Northern District of California stated in rejecting this

same position, "[o]n the defendants' theory, many (if not all) state tort claims that involve the

---

[13] *See Oakland*, 969 F.3d at 906-07 (rejecting *Grable* jurisdiction, which had been argued to be based on theory "that the Cities' state-law claim implicates a variety of 'federal interests,' including . . . foreign policy"); *Minnesota*, 2021 WL 1215656, at *5 ("The Court declines Defendants' invitation to interpret this well-pleaded consumer protection action as a wholesale attack on all features of global fossil fuel extraction, production, and policy."); *Boulder I*, 405 F. Supp. 3d at 966 ("Certainly Defendants have not shown that any interpretation of foreign policy is an essential element of Plaintiffs' claims."); *Rhode Island I*, 393 F. Supp. 3d at 151 ("By mentioning foreign affairs, . . . Defendants seek to raise issues . . . that are not perforce presented by the State's claims."); *Baltimore I*, 388 F. Supp. 3d at 559 ("[D]efendants' generalized references to foreign policy wholly fail to demonstrate that a federal question is 'essential to resolving' the City's state law claims."); *San Mateo I*, 294 F. Supp. 3d at 938 ("The mere potential for foreign policy implications . . . does not raise the kind of actually disputed, substantial federal issue necessary for *Grable* jurisdiction.").

13

balancing of interests and are brought against federally regulated entities would be removable. *Grable* does not sweep so broadly." *San Mateo I*, 294 F. Supp. 3d at 938.

Finally, Defendants contend that Plaintiff's claims would "necessarily incorporate affirmative federal constitutional elements imposed by the First Amendment." (D.I. 96 at 26) The Court is not persuaded. While the cases cited by Defendants address the constitutional boundaries for the remedies available under state-law defamation and libel claims, they do not hold that the Constitution supplies a necessary element for these state-law claims. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (holding that statement of "opinion" reasonably implying false and defamatory facts is subject to same culpability requirements as statement of facts); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (holding that public figures may not recover for intentional infliction of emotional distress by reason of publication without showing both falsity and actual malice); *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774-75 (1986) (holding that private figure plaintiff alleging defamation must prove falsity in cases involving media defendant's speech on matters of public concern); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (holding that public figures may recover for defamation only when they can prove both falsity of statement and that statement was made with actual malice). Defendants cite no authority for the proposition that the First Amendment – through *Grable* jurisdiction – converts state law causes of action involving speech into federal causes of action for purposes of assessing jurisdiction.[14] To the contrary, the Third Circuit has repeatedly found that defamation claims, despite having "profound First Amendment implications," are still "fundamentally a state

---

[14] The only case Defendants cite that was found removable based on *Grable* jurisdiction involves a complaint that "expressly states that [the defendant] violated the United States Constitution in describing [the plaintiff's state-law wrongful termination] claims." *Ortiz v. Univ. of Med. & Dentistry of New Jersey*, 2009 WL 737046, at *1 (D.N.J. Mar. 18, 2009).

cause of action." *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001) (internal citation omitted); *see also Manning*, 772 F.3d at 164 ("[E]ven if Plaintiffs' claims were ***partially*** predicated on federal law, federal law would still not be necessarily raised.").[15]

Many of the decisions Defendants cite in support of their attempts to invoke *Grable* jurisdiction were litigated to judgment in state courts, and then subsequently reviewed by the Supreme Court.[16] (*See* D.I. 101 at 20)  State and local governments routinely litigate nuisance and similar claims that purportedly "target speech on matters of public concern" – and do so in state court.[17] (*See id.* at 19)  It follows that, while Plaintiff's claims may implicate First Amendment considerations, they do not "necessarily raise" a federal issue. *See generally MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 413 (3d Cir. 2015) ("The fact that federal law may be informative . . . does not mean that federal law is a necessary component of the cause of action."); *see also Hoboken*, 2021 WL 4077541, at *7-8 (rejecting argument that First

---

[15] Defendants contended during oral argument that Plaintiff was "seeking to get a prior restraint or to regulate speech." (Tr. at 47)  In response, Plaintiff clarified that "a global prior restraint order injunction . . . is just not part of this case." (*Id.* at 93)  Plaintiff confirmed that it would not "be looking for prospective injunctive relief against speech of any kind," and that Defendants "can continue to market, but they may be subject to liability in Delaware for continued false and deceptive conduct." (*Id.* at 93-94, 103)

[16] *See Milkovich*, 497 U.S. at 6-7 (Ohio); *Hepps*, 475 U.S. at 770 (Pennsylvania); *New York Times*, 376 U.S. at 256 (Alabama).

[17] *See, e.g., Delaware ex rel. Denn v. Purdue Pharma L.P.*, 2018 WL 1942363, at *1 (D. Del. Apr. 25, 2018) (remanding Delaware's case to state court where Delaware alleged, in part, that defendants "misrepresented material facts or suppressed, concealed, or omitted material facts" concerning their products and compliance with federal drug laws); *State v. Purdue Pharma LP*, 2019 WL 4019929, at *12 (Okla. Dist. Ct. Aug. 26, 2019) (awarding $572 million judgment in nuisance trial where "challenged conduct" was "misleading marketing and promotion of opioids," contributing to statewide opioid crisis); *Cty. of Santa Clara v. Atl. Richfield Co.*, 40 Cal. Rptr. 3d 313, 330 (Cal. Ct. App. 2006) (reversing dismissal of public nuisance claim alleging that defendants misled consumers and public about dangers of indoor lead paint).

Amendment created *Grable* jurisdiction for state-law claims); *Connecticut*, 2021 WL 2389739, at *10 (same).

As Defendants have failed to demonstrate that a federal issue is "necessarily raised" by Plaintiff's claims, Defendants have likewise failed to show that the Court may exercise *Grable* jurisdiction. The Court need not additionally evaluate whether Defendants can meet any of the other three requirements for invoking *Grable* jurisdiction.

### C.      Federal Officer Removal Statute

The federal officer removal statute, 28 U.S.C. § 1442(a), is "an exception to the 'well-pleaded complaint' rule." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006). The statute permits removal when four elements are met: "(1) the defendant is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are 'for, or relating to' an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (internal citation omitted). "Unlike the general removal statute, the federal officer removal statute is to be broadly construed in favor of a federal forum." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 466-67 (3d Cir. 2015) (internal quotation marks omitted).

Defendants identify a number of activities they contend satisfy the four elements of the federal officer removal statute. They are: (1) securing and expanding fuel supplies during the two World Wars and the Korean War (D.I. 1 ¶¶ 52-57); (2) developing mineral resources on the outer continental shelf ("OCS") (*id.* ¶¶ 59-62, 68-89); (3) operating the Elk Hills Reserve (*id.* ¶¶ 90-107); (4) supplying and managing the Strategic Petroleum Reserve (*id.* ¶¶ 108-13); and

(5) producing specialized fuels for the military (*id.* ¶¶ 114-37).  Plaintiff does not challenge that

Defendants are "person[s]" within the meaning of the statute and only addresses Defendants'

colorable federal defenses in passing.  (D.I. 89 at 26 n.10)  Plaintiff, however, contends that

(1) its claims do not rest on activities "for, or relating to" an act under color of federal office, and

that (2) Defendants are not "acting under" federal officers.  The Court addresses each of these

two issues, both of which Defendants must prevail on to establish federal officer removal

jurisdiction.

### 1.   Whether Plaintiff's Claims Concern Acts "For, Or Relating To" An Act Under Color Of Federal Office

In the Third Circuit, in order to meet the "for, or relating to" requirement, "it is sufficient

for there to be a 'connection' or 'association' between the act in question and the federal

office."[18]  *Defender Ass'n*, 790 F.3d at 471.

Plaintiff points out that several activities Defendants rely on in their effort to show a

connection or association between activities and federal office – including the operation of

petroleum reserves and the sales of "specialized petroleum products" to the U.S. military – are

irrelevant to the analysis because Plaintiff has, in its complaint, expressly disclaimed any

"injuries arising on federal property and those that arose from Defendants' provision of fossil

fuel products to the federal government."  (D.I. 89 at 26; *see also* D.I. 1-1 ¶ 14)  Defendants

respond that Plaintiff's disclaimer is ineffective because "such 'attempts at artful pleading to

---

[18] The removal statute was amended in 2011 to include the phrase "or relating to."  The Third
Circuit has found this new language "broaden[ed] the universe of acts that enable Federal
officers to remove to Federal court."  *Defender Ass'n*, 790 F.3d at 467.  A defendant is no longer
required to "show a nexus, a causal connection between the charged conduct and asserted official
authority," *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (internal citation and quotation
marks omitted), as had previously been understood to be required, *see Defender Ass'n*, 790 F.3d
at 471-72.

circumvent federal officer removal by the use of jurisdictional disclaimers have generally

failed.'" (D.I. 96 at 56-59) (quoting *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *5 (D.

Del. July 16, 2014)) Defendants' reliance on this Court's decision in *Dougherty* is misplaced.

Plaintiff's disclaimer here is not a "jurisdictional disclaimer" that categorically disclaims

jurisdiction conferred by the federal officer removal statute, but is instead a "claim disclaimer"

that "expressly disclaim[s] the claims upon which federal officer removal was based."[19] *Id.* at

*10. *Dougherty* recognizes that "federal courts have consistently granted motions to remand"

based on "claim disclaimers." *Id.* Defendants have provided no persuasive basis for the Court to

depart from that general principle here.[20]

---

[19] In *Dougherty*, the Court emphasized the distinction between a "jurisdictional claimer" and a
"claim disclaimer." The "jurisdictional disclaimer" the Court found ineffective to avoid removal
under the federal officer removal statute stated:

> Plaintiffs hereby disclaim any cause of action or claim for recovery
> that could give rise to federal subject matter jurisdiction under
> either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1442,
> subdivision (a)(1) (federal officer).

*Dougherty*, 2014 WL 3542243, at *3. The "claim disclaimers," on which the Court granted a
motion to remand, stated:

> Plaintiffs have disclaimed and hereby waive as the basis for any
> relief in this case exposures that may have occurred during Mr.
> Dougherty's service in the United States Navy from 1945-1947.

> To the extent necessary, Plaintiffs also hereby waive all claims
> against Crane stemming from Mr. Dougherty's asbestos exposure
> from any federal government job site, and aboard Navy ships or
> any other military vessel.

*Id.* at *9. The disclaimer asserted by Plaintiff in this case is not a "jurisdictional disclaimer," but
a "claim disclaimer."

[20] Defendants also argue that Plaintiff cannot "factually distinguish between its alleged injuries
resulting from the combustion of fuels produced at the government's behest, and those resulting
from the combustion of fuels sold to any other consumer." (D.I. 96 at 58) However, Plaintiff

Plaintiff rightly explains that other activities cited by Defendants – including Defendants' activities during the Korean War, the two World Wars, and events occurring still earlier than these – are irrelevant for purposes of removal because Defendants' alleged disinformation campaign, which is what the instant case is actually about, started "decades later." (D.I. 89 at 29-30) Defendants are simply wrong in their insistence that all of their production activities, including those pre-dating the misconduct alleged by Plaintiff, are relevant to satisfying the "for, or relating to" requirement. (D.I. 96 at 56 n.13) Defendants' contention relies on their characterization of Plaintiff's claims, which the Court has found to be incorrect. Plaintiff's claims are not based on the "impacts caused by the *cumulative production* of petroleum products," as contended by Defendants (*see id.* at 55), but are, instead, premised on the "incremental impacts" caused by Defendants' purported disinformation and the resulting increased production and consumption of petroleum products (*see* Tr. at 24). As Plaintiff has conceded, it will not be entitled to recover any damages if it turns out that Defendants' alleged campaign of deception had "zero effect on extraction, production, [and] consumption of fossil fuel." (*Id.* at 26-27)[21]

---

alleges that the "climatic and environmental responses to those emissions are calculable, and can be attributed to Fossil Fuel Defendants on an individual and aggregate basis" by "quantifying greenhouse gas pollution attributable to Fossil Fuel Defendants' products and conduct." (D.I. 1-1 ¶ 59)

[21] Defendants rely on *Acker*, 527 U.S. at 432, and *Defender Association*, 790 F.3d at 474, for the proposition that the Court must credit their "theory of the case" for purposes of the federal officer removal statute. (*See* D.I. 96 at 55-56) Defendants have misunderstood these cited cases. In *Acker*, whether there was a connection between the claims in the lawsuit and the defendants' official acts rested on disputed readings of an Ordinance imposing occupational taxes, and the Supreme Court credited the defendants' reading because "[t]o choose between those readings of the Ordinance is to decide the merits of this case." *Acker*, 527 U.S. at 433. In *Defender Association*, whether a colorable federal defense existed turned on conflicting interpretations of a federal statute, and the Third Circuit accepted the defendants' counsel's position because "[it] is the question squarely presented by the merits of this case." *Defender Ass'n*, 790 F.3d at 474.

Excluding Defendants' activities covered by Plaintiff's disclaimer and those predating the accused misconduct, the only remaining activity relevant to the "for, or relating to" analysis is Defendants' operations under the OCS lease program.[22]  The Court finds that, under the Third Circuit's "more permissive view" of the "for, or relating to" test, *Papp*, 842 F.3d at 813, the issue of whether there is a sufficient "connection or association" between Plaintiff's claims and Defendant's participation in the OCS lease program poses a close call.

On one hand, Plaintiff's claims, read as a whole, are focused on "the disinformation and over-promotion campaign," and the recoverable injuries are limited to those stemming from the "incremental impacts" caused by Defendants' alleged deception and misrepresentation.  (*See* D.I. 89 at 28; *see also* Tr. at 24)  Thus, the connection between the tortious misconduct alleged in the complaint and any of Defendants' individual fossil fuel production activities, including the operations under the OCS lease program, may be "too remote."  *Hoboken*, 2021 WL 4077541, at *10; *see also Mayor of Baltimore v. BP P.L.C.* ("*Baltimore II*"), 952 F.3d 452, 466 (4th Cir. 2020).[23]  On the other hand, although Defendants' participation in the OCS lease program does

---

While an officer needs not "win his case before he can have it removed," *Willingham v. Morgan*, 395 U.S. 402, 407 (1969), neither *Acker* nor *Defender Association* authorize Defendants to freely rewrite the complaint and manufacture a cause of action explicitly disclaimed by Plaintiff and then ask the Court to accept their "theory of the case" for purposes of removal. *See Minnesota*, 2021 WL 1215656, at *5 ("To adopt Defendants' theory, the Court would have to weave a new claim for interstate pollution out of the threads of the Complaint's statement of injuries. This is a bridge too far."); *City and Cty. of Honolulu v. Sunoco LP*, 2021 WL 531237, at *7 (D. Haw. Feb. 12, 2021) (declining to credit Defendants' theory of case because "Defendants' theory of the case is not a theory for **this** case").

[22] Plaintiff also contends, and the Court agrees, that Defendants' activities in connection with the Emergency Petroleum Allocation Act ("EPAA") (*see* D.I. 1 ¶ 63 n.50; *see also* D.I. 96 at 43-44) are irrelevant here because the EPAA only controlled the allocation and "distribut[ion] [of] **available** gasoline supplies." (D.I. 101 at 24-25)  The EPAA did not require fossil fuel companies to increase production levels.

[23] The Fourth and Fifth Circuits have adopted the same, more lenient "connection or association" test as the Third Circuit. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257-58 (4th Cir.

not form the source of tort liability asserted by Plaintiff (*see* Tr. at 93) ("[T]he only source of liability is the misrepresentation . . . and the damages are restricted to the impact in Delaware."), the activity nonetheless contributes to the broader theory about "how the unrestrained production and use of Defendants' fossil fuel products contribute to greenhouse gas pollution," *Baltimore II*, 952 F.3d at 467, a theory associated with Plaintiff's alleged injuries.

The Court need not resolve this close question here because, even assuming Defendants' operations under the OCS lease program satisfy the "for, or relating to" test, the relationship between Defendants and the federal government under the OCS leases – for the reasons to be explained in the next section – does not meet the "acting under" requirement. Thus, Defendants have failed to show that removal is proper under the federal officer removal statute, even assuming they could meet the "for, or relating to" test.

### 2.    Whether Defendants "Acted Under" Federal Officers

The "acting under" requirement is "to be liberally construed to cover actions that involve an effort to ***assist***, or to help ***carry out***, the federal supervisor's duties or tasks." *Papp*, 842 F.3d at 812 (internal citation and quotation marks omitted). The "classic case" of such a relationship is when a private contractor "help[s] the Government to produce an item that it need[s]." *Id.* (internal citation omitted). This relationship "typically involves subjection, guidance, or control." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151 (2007). The relationship required to

---

2017); *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859-60 (5th Cir. 2021). Several other courts, applying the apparently more stringent "causal nexus" standard, have found that the connection between Defendants' fossil fuel production and a similarly-situated plaintiff's claims is insufficient to satisfy the "for, or relating to" requirement of the federal officer removal statute. *See, e.g.*, *Rhode Island v. Shell Oil Prods. Co.* ("*Rhode Island II*"), 979 F.3d 50, 59-60 (1st Cir. 2020); *Minnesota*, 2021 WL 1215656, at *9; *Honolulu*, 2021 WL 531237, at *6-7; *Boulder I*, 405 F. Supp. 3d at 976-78; *Rhode Island I*, 393 F. Supp. 3d at 152; *San Mateo I*, 294 F. Supp. 3d at 939.

support federal jurisdiction under the federal officer removal statute, however, "does **not** include simply **complying** with the law." *Id.* at 152.

Relying on the declaration of Dr. Richard Tyler Priest (D.I. 98), Defendants contend that the OCS leases "are not merely commercial transactions;" instead, the federal government exerts "substantial control and oversight" over Defendants' operations under the OCS leases (D.I. 96 at 36-38). Defendants further contend that the OCS lease program reflects "the creation of a valuable national security asset for the United States over time," and that the OCS leases entered into with Defendants are intended to achieve the same "federal objective" as would the creation of a "national oil company." (*Id.* at 36-40) The Court does not agree that Defendants' operations under the OCS leases constitute acts under federal officers.

What Defendants identify as "substantial control and oversight" over their operations is no more than a set of requirements that Defendants, like all other OCS lessees, must comply with; specifically, federal statutes and regulations concerning operation, safety, and environmental impacts. *See* 43 U.S.C. § 1337(a)(1) (authorizing OCS leases to be granted "under regulations promulgated in advance"); *see also Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 594 (D.C. Cir. 2015) (describing OCSLA as statute with "a structure for every conceivable step to be taken on the path to development of an OCS leasing site"). Dr. Priest generally opines that the regulations governing operations under the OCS leases "went well beyond those that governed the average federally regulated entity at that time." (D.I. 98 ¶ 19) Dr. Priest also points to, as additional evidence that Defendants are "acting under" federal officers, the detailed authorities provided by the statutes and regulations to federal officers to enforce compliance. (*See, e.g.*, D.I. 98 ¶¶ 20-29) However, even if a private company is "subjected to intense regulation," compliance with law and regulations is not enough for "acting

under" removal. *See Watson*, 551 U.S. at 153; *see also Cty. of San Mateo v. Chevron Corp.* ("*San Mateo II*"), 960 F.3d 586, 603 (9th Cir. 2020) ("Mere compliance with the law, even if the laws are highly detailed, and thus leave an entity highly regulated, does not show that the entity is acting under a federal officer."). Defendants fail to adduce any evidence that the federal government has exercised "subjection, guidance, or control" over Defendants' production activities beyond requiring Defendants to comply with statutes and regulations governing OCS leases.

Fossil fuel production under the OCS leases by private companies does not amount to an effort to assist federal officers to "fulfill basic government needs, accomplish key government tasks, or produce essential government products." *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.* ("*Boulder II*"), 965 F.3d 792, 823 (10th Cir. 2020). The type of relationship contemplated by the federal officer removal statute requires that Defendants "stand in for critical efforts the federal superior would be required to undertake itself in the absence of a private contract." *Id.*; *see also Cty. Bd. of Arlington Cty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 253-54 (4th Cir. 2021) (finding that defendants "were essentially acting as the statutorily authorized *alter ego* of the federal government" by providing "healthcare services that [Department of Defense] must, by law, provide"); *Papp*, 842 F.3d at 813 (finding defendant "work[ed] under a federal contract to produce an item the government needed, to wit, a military aircraft, and that the government otherwise would have been forced to produce on its own"); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) (finding defendants "provide[d] a product that the Government was using during war," which it otherwise "would have had to produce itself"). Here, by contrast, Defendants fall short of demonstrating that OCS lessees are performing a task that the federal government would otherwise be required to undertake itself.

23

Additionally, Defendants are not "tailoring [their] output to detailed federal formulations customized to meet pressing federal needs;" rather, they are "leasing federal land to facilitate commercial production of a standardized, undifferentiated consumer product." *Boulder II*, 965 F.3d at 825; *see also Baltimore II*, 952 F.3d at 464 ("[T]he cited provisions seem typical of any commercial contract. They are incidental to sale and sound in quality assurance."); *San Mateo II*, 960 F.3d at 601 ("The contracts evince an arm's-length business relationship to supply . . . generally available commercial products."). The situation here is unlike those found in cases in which the "acting under" relationship was present. *See, e.g.*, *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) (finding "acting under" relationship because of, in part, "the compulsion to provide the product to the government's specifications"); *Sawyer*, 860 F.3d at 251-52 (finding that defendant satisfies "acting under" requirement by manufacturing boilers for use aboard U.S. Navy vessels "under the Navy's strict specifications").

Defendants' reference to certain congressional proposals to create a "national oil company" does not help them. (D.I. 96 at 39) These never-enacted bills provide no basis to find a congressional intent to create, directly or indirectly, a "national oil company." Thus, Defendants' contention that they are "acting as agents" to achieve the same "federal objective" (i.e., facilitating oil and gas production on the OCS) as would a speculative, non-existent "national oil company" lacks merit.

In sum, the relationship between Defendants and the federal government under the OCS leases does not satisfy the "acting under" requirement.[24] Hence, Defendants have not shown that removal is proper under the federal officer removal statute.

---

[24] The First, Fourth, Ninth, and Tenth Circuits have examined the same OCS leases at issue here, and all have rejected Defendants' argument that Defendants acted under federal officers by

24

### D.    Jurisdiction Under The OCSLA

The OCSLA provides federal district courts with subject matter jurisdiction over "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . . ." 43 U.S.C. § 1349(b)(1).  To determine whether OCSLA jurisdiction is present, the Court assesses (1) whether there is an "operation," and (2) whether the case "arise[s] out of, or in connection with" such "operation."

The parties disagree as to the proper legal standard to be applied with respect to the first prong of the test.  Relying on the text of the statute, Defendants contend the inquiry is "did the defendant engage in an 'operation conducted on the [OCS]' that entails the 'exploration' and 'production' of 'minerals.'"  (D.I. 96 at 29)  Under that interpretation, Defendants argue they satisfy the "operation" requirement.  *See Honolulu*, 2021 WL 531237, at *3 ("Here, the parties do not dispute that Defendants, at least to some extent, engage in operations of exploration, development, or production on the outer Continental Shelf.").  Plaintiff, citing Fifth Circuit precedent, counters that the inquiry is whether "the activities that caused the injury constituted an 'operation' 'conducted on the OCS' that involved the exploration and production of minerals." (D.I. 89 at 50) (citing *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014))  On this view, Plaintiff continues, Defendants' "activities that caused the injury" are not an "operation" because Plaintiff's claims are rooted in Defendants' alleged disinformation campaign, not in Defendants' fossil fuel production.  *See Baltimore I*, 388 F. Supp. 3d at 566-67 ("[T]he City's claims are based on a broad array of conduct, including defendants' failure to warn consumers

---

developing mineral resources pursuant to OCS leases. *See Rhode Island II*, 979 F.3d at 59; *Baltimore II*, 952 F.3d at 465-68; *San Mateo II*, 960 F.3d at 602; *Boulder II*, 965 F.3d at 820-27.

and the public of the known dangers associated with fossil fuel products, all of which occurred globally."); *Boulder I*, 405 F. Supp. 3d at 978-79 ("Defendants were not sued merely for producing fossil fuel products, let alone for merely producing them on the OCS."). The Court need not resolve this dispute because Defendants fail the second prong of the test; thus, they cannot invoke federal jurisdiction under the OCSLA even if they have demonstrated an "operation."

Under the second prong, the Fifth Circuit – which has substantial familiarity with OCSLA cases – has held that Defendants must show a "but for" connection between "the cause of action and the OCS operation." *Deepwater Horizon*, 745 F.3d at 163. Here, Defendants cannot satisfy this requirement. Defendants contend only that their purportedly "significant" OCS production has contributed in some way to Plaintiff's injuries (D.I. 96 at 30), but they do not argue that Plaintiff would not have been injured "but for" Defendants' operations on the OCS.[25] *See generally Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988) (finding plaintiff's activities fall within scope of OCSLA because plaintiff "would not have been injured 'but for' the maintenance work he was performing and supervising on the platform").

Having failed to satisfy the "but for" requirement, Defendants instead argue that the requirement should not apply here. Defendants first contend that the "but for" requirement is "contrary to the text of the statute, which requires only a 'connection.'" (D.I. 96 at 31) However, as the Supreme Court has observed, "[t]he phrase 'in connection with' provides little guidance without a limiting principle." *Maracich v. Spears*, 570 U.S. 48, 49 (2013). In the Court's view, the "but for" requirement as construed by the Fifth Circuit is a reasonable principle

---

[25] It appears that Defendants have conceded this point, as they stated during oral argument that "no one could prove but-for causation as to any particular one [i.e., an OCS operation] because it is so global in nature." (Tr. at 84)

that limits the scope of the phrase. *See Deepwater Horizon*, 745 F.3d at 163 ("Even though one can hypothesize a 'mere connection' between the cause of action and the OCS operation too remote to establish federal jurisdiction, this court deems § 1349 to require only a 'but-for' connection.").

Defendants also contend that while a "but for" connection would be sufficient to meet the requirement for OCSLA jurisdiction, it is not necessary. (D.I. 96 at 31)  The Court agrees, however, with the decisions that have interpreted the "but for" connection as a necessary requirement; decisions that have also, therefore, declined to find jurisdiction based on a more tangential relationship. *See, e.g.*, *Robin v. Creighton-Smith*, 488 F. Supp. 3d 459, 465 (E.D. La. 2020) ("Plaintiffs' contractual claims . . . are at best only tangentially related to such an operation and do not come close to meeting the but-for test required to give rise to jurisdiction."); *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 837 (E.D. La. 2014) (finding no OCSLA jurisdiction because "Plaintiff's injury would have occurred regardless of operations on the OCS, and the but-for test is not satisfied.").[26]  Several district courts that have considered the identical issue raised by similarly-

---

[26] The Court is not persuaded by Defendants' contention to the contrary that "[c]ourts have routinely held that OCSLA jurisdiction is proper in the absence of a but-for causation." (D.I. 96 at 31-32)  In the two cases cited by Defendants (both predating *Deepwater Horizon*), the dispute would not have existed absent an OCS operation. *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 565 (5th Cir. 1994) ("The current dispute arose out of EP's attempt to recover some value from these unused and depreciating assets on the OCS."); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) ("The present dispute . . . involves a contractual dispute over the control of an entity which operates a gas pipeline [from the OCS to the coast of Louisiana].").

situated defendants have uniformly held that a but-for connection is necessary for finding OCSLA jurisdiction.  The Court sees no persuasive reason to depart from these holdings.[27]

Since Defendants fail to demonstrate a "but for" connection between their "operations" on the OCS and Plaintiff's claims, they cannot rely on the OCSLA for federal jurisdiction. Removal, therefore, cannot be justified on the basis of OCSLA jurisdiction.

### E.    Attorneys' Fees And Costs

Plaintiff seeks an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  (*See also* D.I. 101 at 38-40)  Plaintiff waived its opportunity to request attorneys' fees and costs by raising this issue for the first time in its reply brief.  *See, e.g.*, *Cottillion v. United Refining Co.*, 781 F.3d 47, 61 (3d Cir. 2015) (finding argument made for first time in reply brief waived).  In any event, Plaintiff's request lacks merit.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "[D]istrict courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."  *Id.*  Although the overwhelming weight of authority in other similar cases

---

[27] *See Hoboken*, 2021 WL 4077541, at *9 ("Although it is more than plausible that fossil fuels originating from the OCS led to the effects of global warming that Hoboken is now facing, this does not amount to but-for causation."); *Minnesota*, 2021 WL 1215656, at *10 ("Defendants offer no basis for the Court to conclude that Minnesota's alleged injuries would not have occurred but-for the Defendants' extraction activities on the OCS."); *Rhode Island I*, 393 F. Supp. 3d at 151-52 ("Defendants have not shown that these injuries would not have occurred but for those operations."); *Baltimore I*, 388 F. Supp. 3d at 566-67 ("[D]efendants offer no basis to enable this Court to conclude that the City's claims for injuries stemming from climate change would not have occurred but for defendants' extraction activities on the OCS."); *San Mateo I*, 294 F. Supp. 3d at 938-39 ("[D]efendants have not shown that the plaintiffs' causes of action would not have accrued ***but for*** the defendants' activities on the shelf").

against fossil fuel companies supports Plaintiff, the Third Circuit has not decided these issues. Defendants have also supplied new record evidence, including Dr. Priest's declaration, concerning their operations under the OCS leases. (*See* Tr. at 54-55) It was not objectively unreasonable for Defendants to wish to litigate these removal grounds again, in this Circuit. Finally, the Court perceives no bad faith in Defendants' narrowing of their bases for removal, and agrees with Defendants that Plaintiff's lengthy complaint is fairly susceptible to different interpretations (although the Court believes the best reading is the one Plaintiff has clarified it intended).

For all of these reasons, the Court will deny Plaintiff's request for attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (D.I. 86) will be granted, and Plaintiff's request for attorneys' fees and costs will be denied. An appropriate order follows.